## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF KANSAS

**TERI McCAMMON and**
**COREY McCAMMON,**

**Plaintiffs,**

v.

Case No.  06-2242-JWL

**BIBLER, NEWMAN &**
**REYNOLDS, P.A., et. al.,**

**Defendants.**

## MEMORANDUM & ORDER

In this matter, plaintiffs Teri McCammon and Corey McCammon allege violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA") against defendants Bibler, Newman & Reynolds PA, Billy E. Newman,[1] and Dynamic Recovery Services (Dynamic). Plaintiffs also allege claims of defamation and tortious interference with a contract right and request enforcement of a settlement agreement.  Currently before the court are motions for summary judgment by defendants B&N (doc. 39) and Dynamic (doc. 42).  For the reasons stated below, both motions are denied.

## Summary Judgment Standard

---

[1]Because Mr. Newman and Bibler, Newman & Reynolds move for summary judgment in the same motion with the same arguments, the court will refer to them collectively as B&N.

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006).  An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way."  *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).  A fact is "material" when "it is essential to the proper disposition of the claim."  *Id.*

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.  *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon his or her pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).  To accomplish this, sufficient evidence pertinent to the material issue  "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."  *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675

2

(10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## **Defendant B&N's Motion for Summary Judgment**

### I.    Facts

Ms. McCammon incurred a debt with ATMOS Energy Company ("ATMOS") sometime prior to January 31, 2005.  This unpaid bill was referred to a non-party collection agency based in Colorado which hired B&N to collect the debt.  B&N instituted a collection lawsuit against Ms. McCammon on behalf of ATMOS in January of 2005 in the district court of Johnson County, Kansas.  On March 31, 2005, Ms. McCammon appeared in the district court action and entered a general denial.  Discovery requests were served on Ms. McCammon in early August of 2005.  Ms. McCammon contacted B&N regarding the discovery requests and also informed B&N that she had satisfied the debt by paying Dynamic.  B&N told Ms. McCammon that she would need to remit payment directly to B&N to satisfy the debt because B&N did not know anything about Dynamic collecting on the debt.

On August 23, 2005, Ms. McCammon called B&N and insisted that she had paid Atmos the $798 she owed; B&N responded that they would have to verify the payment and that, regardless of paying the $798, Ms. McCammon would still need to pay the costs and pre-judgment interest.  On August 26, 2005, the court entered default judgment against Ms. McCammon in the amount of $968.53, which included interest and costs; the judgment also

3

provided for post-judgment interest.  On October 3, 2005, after receiving confirmation that Ms.

McCammon had paid $798 to Atmos, B&N informed Ms. McCammon that she still needed to

pay the remaining balance of $279.87, which consisted of fees and interest as awarded in the

state court judgment.  Ms. McCammon ultimately agreed to pay the $279.87 balance in two

payments.

Soon after the conversation with B&N, Ms. McCammon pulled her credit report and

noticed the default judgment by Atmos appeared.  She contacted B&N and asked why the

judgment was entered when she had already paid $798 to Dynamic.  According to B&N, it had

sought but not received confirmation of the payment to Atmos until after the default judgment

was entered.  B&N also told Ms. McCammon that she still owed B&N the balance of $279.87

pursuant to the court's order regarding the default judgment.  Ms. McCammon stated that she

"assumed" the $279.87 amount included attorney's fees.  B&N states, however, that this amount

consists only of court filing costs and interest, as provided for in the district court's order, and

does not include attorney's fees.

On June 10, 2006, Ms. McCammon and her husband, Cory McCammon, filed this

lawsuit, alleging that B&N committed various violations of the FDCPA which caused the

plaintiffs to suffer actual damages as well as consequential damages in the nature of damaged

credit and higher interest rates stemming from the allegedly erroneous entry of default judgment

in the state court.  The plaintiffs also assert state claims of defamation and tortious interference

with a contract right against B&N.  In its motion for summary judgment, B&N does not address

the merits of plaintiffs' arguments.  Instead, B&N alleges that the plaintiffs' FDCPA claims are

4

barred by the *Rooker-Feldman* doctrine or, alternatively, that those claims are barred because plaintiffs cannot prove injury in fact or causation.[2]

**II.     Analysis**

*A.*     Rooker-Feldman *Doctrine*

Defendants argue that, because the plaintiffs are essentially asking this court to rule on the validity of the state court judgment, this court lacks subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine.  Plaintiffs, on the other hand, assert that they are not seeking a review of the state court judgment; rather, they are complaining that the debt collection practices that B&N engaged in prior to and after the default judgment was entered violated federal law.

The origin of the *Rooker -Feldman* doctrine is 28 U.S.C. § 1257(a), which states that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari."  In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), the Supreme Court interpreted this statute to mean that only it can hear appeals from final judgments of state courts and, therefore, by negative inference a federal district court does not have subject matter jurisdiction to review a case that was resolved by state courts. *Id.* at 415-16.  The Supreme Court elaborated on this principle in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), when it held that challenges to a state court judgment are barred not only if the claims forming the basis of the challenge were raised in the state court proceedings, but also if the claims presented to the district court are "inextricably intertwined" with the state court's denial of the plaintiff's claims. *Id.* at 483 n.16.

---

[2]B&N's motion does not address plaintiffs' state law claims.

The Supreme Court revisited this doctrine in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005). In *Exxon Mobil*, the Court observed that the *Rooker-Feldman* doctrine had been variously interpreted in the lower courts and had "sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases." *Id.* at 283.  The Court clarified that the scope of the doctrine is "confined" to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284; *accord Lance v. Dennis*, 546 U.S. 459 (2006)(observing that the Court in *Exxon Mobil* explained that *Rooker -Feldman* is a "narrow doctrine").  The Court added: "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Exxon Mobil*, 544 U.S. at 293 (quoting *Gash Assocs. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

At least five courts post-*Exxon* have considered the applicability of the *Rooker Feldman* doctrine to circumstances similar to those in this case, where creditors (or debt collectors) obtain a judgment in state court but have their collection practices challenged in federal court under the FDCPA.  *Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432 (6th Cir. 2006); *Anderson v. Gamache & Myers, P.C.*, 2007 WL 1577610 (E.D. Mo. May 31, 2007); *Foster v. D.B.S. Collection Agency*, 463 F. Supp. 2d 783 (S. D. Ohio 2006); *Wyles v. Excalibur I, LLC*, 2006 WL 2583200 (D. Minn. 2006); *Senftle v. Landau*, 390 F. Supp. 2d 463 (D. Md. 2005). These courts all found that *Rooker-Feldman* did not bar claims under the FDCPA where the

plaintiff disputed the collection practices utilized by the debt collector, not the validity of the state court judgment. *Todd*, 434 F.3d at 437; *Anderson*, 2007 WL 1577610 at *6; *Foster*, 463 F. Supp. 2d at 798; *Wyles*, 2006 WL 2583200 at *7; *Senftle*, 390 F. Supp. 2d at 470.

For example, in *Senftle*, the district court determined the plaintiff's allegations regarding defendant's violations of the FDCPA "pertain[ed] to the manner in which [defendant] collected Senftle's debt, not the validity of the underlying debt." *Senftle*, 390 F. Supp. 2d at 469. Thus, the court concluded, *Rooker-Feldman* did not preclude subject matter jurisdiction because the plaintiff's injury did not relate to the state court's determination that the debt was valid. *Id*. at 470. Similarly, in *Todd*, the Sixth Circuit concluded that the plaintiff's FDCPA claims were not precluded by *Rooker-Feldman* because the plaintiff's claim was not that he was injured as a result of the state court judgment but rather that he was injured by defendant's method of collection, that is, the filing of a false affidavit, which constituted an independent federal claim under the FDCPA. *Todd*, 434 F.3d at 436.

In *Foster*, the district court relied on *Todd* and held that *Rooker-Feldman* did not apply because "[p]laintiffs' alleged injuries here are not the result of the state court judgments themselves, but rather [result] from the allegedly illegal practices Defendants used to obtain those state court judgments." *Foster*, 463 F. Supp. 2d at 798. In *Wyles*, the district court relied on the reasoning of *Todd* and *Senftle* and concluded that the plaintiff asserted a claim independent from the state court judgment where his FDCPA claim challenged the defendant's debt collection practices and not the validity of the debt itself. *Wyles*, 2006 WL 2583200, at *2. Finally, in *Anderson*, the district court reached the same conclusion, finding that "[i]n the matter

7

under consideration Plaintiff does not challenge the validity of the State court's judgment; rather, Plaintiff's claim exclusively addresses [the defendant's] conduct in attempting to collect a debt in violation of the FDCPA." *Anderson*, 2007 WL 1577610, at *6.

In this case, plaintiffs allege that B&N used false, deceptive, and misleading representations and means in connection with the collection of the Atmos debt in violation of § 1692e. More specifically, plaintiffs allege that B&N: (1) violated § 1692e(2)(B)[3] by continuing to demand payment knowing that Ms. McCammon had paid Atmos; (2) violated §§ 1692e(4) and (5)[4] by continuing to pursue the state court judgment knowing Ms. McCammon had paid Atmos; and (3) violated § 1692e(8)[5] by failing to report the debt paid and remove the judgment from Ms. McCammon's credit report. Plaintiffs also allege that B&N engaged in debt collection conduct which oppressed and abused plaintiffs in violation of § 1692d and used unfair or unconscionable means to collect the debt in violation of § 1692f.[6]

---

[3]15 U.S.C. § 1692e(2)(B) prohibits the false representation of "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt."

[4]15 U.S.C. § 1692e(4) prohibits "[t]he representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action."
15 U.S.C. § 1692e(5) prohibits threatening "to take any action that cannot legally be taken or is not intended to be taken."

[5]15 U.S.C. § 1692e(8) prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."

[6]The complaint in this case largely follows the language of the federal statute without much specific detail and the pretrial order has not yet been entered. The court has, therefore, determined these to be the gist of the claims asserted by the plaintiffs based on the assertions contained in their response to B&N's motion for summary judgment. Furthermore, because B&N did not address the

Although the court recognizes that the above-cited cases do not involve exactly the same facts as this case and are not binding on this court, it nevertheless finds their reasoning persuasive.  In the Kansas action, the Johnson County District Court simply found that Atmos was entitled to default judgment.  In this case, on the other hand, Ms. McCammon brings a claim under the FDCPA, challenging the debt collection practices B&N utilized in obtaining the default judgment and not the validity of the default judgment itself.  Thus, because the court perceives Ms. McCammon's complaint as alleging an FDCPA claim stemming from B&N's debt collection practices  rather than the result of the state court proceedings, it concludes that these claims are not precluded by the *Rooker-Feldman* doctrine.  *See Wyles*, 2006 WL 2583200. at *2 ("Because an FDCPA plaintiff is not challenging the validity of the debt, but rather the collection practices of a [debt collector], a claim under the FDCPA is an 'independent claim' from a state court action to collect a debt, and Federal courts have jurisdiction over the case.")(citing *Todd*, 434 F.3d at 437 and *Senftle*, 390 F. Supp. 2d at 469).

B.     *Damages*

B&N also argues that they are entitled to summary judgment because the plaintiffs cannot establish that they suffered "injury in fact" as required for Article III standing.  However, the Tenth Circuit has explicitly recognized that, because "the FDCPA provides for liability for attempting to collect an unlawful debt . . . and permits the recovery of statutory damages . . . in the absence of actual damages[,] . . . actual damages are not required for standing under the

---

underlying merits of these claims, the court makes no findings regarding whether these claims will ultimately be successful.

FDCPA." *Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1212 (10th Cir. 2006)(quoting *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 307 (2d Cir. 2003)). Accordingly, to the extent B&N argues it is entitled to summary judgment because the plaintiffs lack standing for failure to establish an injury in fact, the motion is denied. *See id*.

B&N also argues it is entitled to summary judgment because the plaintiffs cannot establish causation with respect to their damages without an expert witness and the time for designating expert witnesses has passed. B&N cites *Bynum v. Cavalry Portfolio Services, L.L.C.*, 2006 WL 1047035 (N. D. Okla. 2006) for the proposition that "only expert testimony is allowed on technical questions of causation." This citation to *Bynum* is curious, however, in light of the fact that in that case involving FDCPA claims, the district judge ultimately opined that the defendant had "failed to provide legal support for the proposition that plaintiff may not successfully make out a claim for emotional distress damages, medical costs, or lost earnings without expert testimony." *Bynum*, 2006 WL 1047035 at *5. Thus, the court concludes B&N has offered no authority for its proposition that the plaintiffs cannot recover damages for their FDCPA claims without expert testimony, nor has the court located any such authority. Thus, B&N's motion is denied with respect to this issue.

### Defendant Dynamic's Motion for Summary Judgment

### I.  Facts

Ms. McCammon incurred a debt with ATMOS Energy Company ("ATMOS") sometime prior to January 31, 2005. In April of 2005, after being hired by ATMOS to collect the debt, Dynamic contacted Ms. McCammon concerning the debt. Subsequently, Dynamic and Ms.

McCammon entered into a settlement agreement whereby Ms. McCammon agreed to make an initial payment of $100 by phone and to remit the remaining balance of $698 within one week to ATMOS in satisfaction of the debt.  In her deposition, Ms. McCammon testified that she asked a representative of Dynamic "does this mean that if . . . I pay this debt, that I will avoid judgment" and that the representative responded "yes."  Ms. McCammon testified that she made the assumption that Dynamic was in contact with B&N; she "figured"  that if she paid the debt to Dynamic, she would avoid judgment in the B&N action.  Ms. McCammon did submit the initial payment of $100 and subsequently sent a check for $698.69 which was cashed on August 1, 2005.  Dynamic states that it had no knowledge of B&N's collection actions concerning this debt.

On June 10, 2006, Ms. McCammon and Mr. McCammon filed the complaint in this action alleging that Dynamic violated various provisions of the FDCPA.  Specifically, the plaintiffs allege that Dynamic: (1) falsely represented to plaintiffs the character, amount and legal status of the debt owed by Ms. McCammon in violation of § 1692e(2)(A); made a false representation to plaintiffs concerning the services rendered and the compensation which may be lawfully received in violation of § 1692e(2)(B); communicated credit information which is known or should be known to be false in violation of § 1692e(8); created a false impression as to the authorization and approval of the state court judgment in violation of § 1692e(9); and used false representations and deceptive means to collect or attempt to collect the debt of Ms. McCammon in violation of § 1692e(10).  The plaintiffs also allege that Dynamic violated §§ 1692d(1) and

11

1692f(1).[7]

## II.   Analysis

Dynamic argues that, because it had no knowledge of B&N's collection actions, there is no genuine issue of material fact regarding whether it violated the FDCPA.  In its motion, Dynamic makes a conclusory statement that "[t]he undisputed facts, however, establish that Dynamic had no involvement in the lawsuit brought by [B&N] on behalf of ATMOS against Teri McCammon or entry and maintenance of the resulting judgment."  This statement does not, however, address Ms. McCammon's specific arguments that Dynamic violated the FDCPA as set forth in her complaint.

Dynamic relies on the district court's opinion in *O'Connor v. Check Rite, Ltd.*, 973 F. Supp. 1010 (D. Colo. 1997) in stating  that "to avoid summary judgment on Plaintiffs' FDCPA claims, Plaintiffs must come forward with admissible evidence that creates a genuine issue for trial."  Although Dynamic does not utilize a pinpoint cite, it appears that it cites to a portion of the *O'Connor* opinion examining the *plaintiff's* motion for summary judgment, where the plaintiff bears the burden of coming forward with "admissible evidence" to establish his or her claim and thus show that he or she is entitled to summary judgment.  *See O'Connor*, 973 F. Supp. at 1017.   As the party moving for summary judgment in this case, however, Dynamic bears the *initial* burden of demonstrating that there is an absence of evidence to support the plaintiffs' claims.  *Celotex Corp.*, 477 U.S. at 325.  To satisfy this burden, Dynamic must show

---

[7]  Although it is unclear whether the plaintiffs assert their state law claims for defamation and tortious interference with a contract against Dynamic, the court need not determine that issue because Dynamic does not argue that it is entitled to summary judgment on those claims.

why it is entitled to judgment as a matter of law by informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, that demonstrate the absence of genuine issues for trial. *Id*. at 323; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992).

Dynamic has failed to satisfy this burden because there is nothing in the mere five paragraphs of briefing that it devoted to this issue, except for the conclusory statement mentioned above, to demonstrate the absence of genuine issues for trial regarding any of the plaintiffs' specific claims. Although the court and/or a jury may ultimately find the plaintiffs' arguments weak, the court declines to attempt to determine Dynamic's summary judgment arguments in the absence of any guidance from Dynamic itself. Thus, the court concludes Dynamic is not entitled to summary judgment.[8]

Dynamic also argues that it is entitled to summary judgment, irrespective of liability, because Ms. McCammon has no admissible evidence of actual damages. Specifically, Dynamic argues that the plaintiffs must have an expert testify regarding the actual damages and that, since they have failed to designate an expert within the requisite deadline, the plaintiffs' claims must fail as a matter of law for lack of damages. As mentioned above, however, so long as plaintiffs prove a violation of the FDCPA, they may be entitled to recover statutory damages. *See Robey*, 434 F.3d at 1212. Thus, the court concludes that, irrespective of the plaintiffs' ability to prove

---

[8]Similarly, Dynamic's unsupported allegation in a footnote that "Dynamic had no contract whatsoever with co-plaintiff Corey McCammon and for this reason alone, his claims should be dismissed" is insufficient to show that Dynamic is entitled to summary judgment on Mr. McCammon's claims.

actual damages, Dynamic would not be entitled to judgment as a matter of law in light of the

FDCPA section providing for statutory damages, 15 U.S.C. § 1691k(a)(2)(A), and the court

denies Dynamic's motion for summary judgment on that issue as well.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant B&N's motion for

summary judgment (doc. 39) is denied and defendant Dynamic's motion for summary

judgment (doc. 42) is denied.

      **IT IS SO ORDERED.**


      Dated this 2nd day of July, 2007.


                             s/ John W. Lungstrum
                             John W. Lungstrum
                             United States District Judge