## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Teri McCammon and**
**Corey McCammon,**

       **Plaintiffs,**

v.                                                                                          Case No. 06-2242-JWL

**Bibler, Newman & Reynolds, P.A.**
**and Billy E. Newman,**

       **Defendants.**

## **MEMORANDUM & ORDER**

Plaintiffs filed suit against defendants asserting violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and state law claims of defamation and tortious interference with contract. This matter is presently before the court on plaintiffs' motion for summary judgment on their FDCPA claims (doc. 102) and defendants' motion for summary judgment on plaintiffs' claim for actual damages based on the *Rooker-Feldman* doctrine (doc. 101). As set forth in more detail below, the court denies plaintiffs' motion in light of the existence of material disputed factual issues concerning plaintiffs' FDCPA claims. The court construes defendants' motion as a motion to dismiss for lack of subject matter jurisdiction and that motion is granted in part and denied in part as explained below.[1]

---

[1]Although defendants seek summary judgment based on the court's lack of subject matter jurisdiction pursuant to *Rooker-Feldman*, "the general rule is that it is improper for a district court to enter judgment under Rule 56 for defendant because of a lack of jurisdiction." *Shikles v. Sprint/United Management Co.*, 426 F.3d 1304, 1317-18 (10th Cir. 2005). When a district court determines that it lacks subject matter jurisdiction over a case, the proper disposition of the case is the entry of an order dismissing the case rather than the

**I.     Facts**

The consumer debt in this case owed by plaintiff Teri McCammon stems from an unpaid utility bill for gas services provided by Atmos Energy Corporation ("Atmos") to Ms. McCammon's residence. Defendants were retained to collect Ms. McCammon's debt to Atmos and, in August 2004, defendants received Atmos's debt collection file concerning Ms. McCammon. In January 2005, defendants filed suit in the District Court of Johnson County, Kansas on behalf of Atmos against Ms. McCammon. That suit alleged an indebtedness of $798.69 plus interest and it is undisputed that Ms. McCammon was served with the petition and summons in that case. Ms. McCammon, however, did not file a written answer to the state court petition and, although she received from defendants in connection with the state court litigation various written discovery requests, including requests for admissions, Ms. McCammon did not answer those requests.

On March 30, 2005, Ms. McCammon appeared at the first hearing of the state court case and, in a conversation with defendants outside the courtroom, denied the amount of the debt as asserted by defendants on behalf of Atmos in the petition. Specifically, Ms. McCammon advised defendants that she believed that the debt inappropriately included amounts billed for services provided during a time when she no longer lived at the residence. According to Ms. McCammon, defendants then agreed to "verify the dates" for which she was billed and Ms. McCammon agreed to pay the same upon verification. According to defendants, they simply

---

entry of summary judgment. *Id.* at 1318.

agreed to verify with Atmos the amount due. In any event, defendants sent a letter to Ms. McCammon in June 2005 acknowledging her assertion that the debt may have included amounts billed for services provided when she no longer lived at the residence, but reiterating the balance due of $798.69 as "correct and owing" per Atmos.

During this same time frame, apparently unbeknownst to defendants, Atmos authorized another debt collector, Dynamic Recovery Services, Inc. ("Dynamic"), to collect the debt owed by Ms. McCammon to Atmos. In late July 2005, an agreement was reached whereby Ms. McCammon agreed to resolve the debt to Atmos through payments to Dynamic on behalf of Atmos. On August 1, 2005, Dynamic deposited checks from Ms. McCammon to Atmos into Dynamic's account. On that same day, Ms. McCammon advised defendants that she had arranged with Dynamic to pay the debt. Defendants advised Ms. McCammon that Atmos would have to confirm any such payment. Defendants' evidence suggests that Atmos did not verify Ms. McCammon's payment of the debt until September 20, 2005 despite defendants' repeated attempts to verify the payments sooner.

In late August 2005, Ms. McCammon received notice from the state court that the state court case filed by defendants on behalf of Atmos was, as explained by Ms. McCammon, "set on the Court's dismissal docket for lack of prosecution" and that the parties needed to contact the court to have the case removed from the dismissal docket. Ms. McCammon contends that she contacted defendants about the notice and that defendants assured her that she did not need to appear for the dismissal docket and that they would handle removing the case from the dismissal docket. Defendants deny discussing the court's notice with Ms. McCammon in any

3

respect. Ms. McCammon also asserts that she advised defendants at this time that she had made full payment to Dynamic. Defendants reiterated to Ms. McCammon at that time that they had no verification from Atmos that payment had been made and reminded Ms. McCammon that her obligation included the full utility claim as well as court costs and prejudgment interest. Three days later, on August 26, 2005, defendants filed a motion for summary judgment in the state court case (based on Ms. McCammon's failure to respond to the requests for admissions and thus admitting the allegations in the petition) and submitted to the court a proposed journal entry of judgment by default based on Ms. McCammon's failure to answer the petition. That same day, the state court entered the judgment by default submitted by defendants. Thereafter, defendants continued to attempt to collect amounts due under the judgment less any confirmed payments to Atmos. Thus, according to defendants, they continued to seek the full amount due until September 20, 2005 when Ms. McCammon's account was credited for payments confirmed by Atmos. After that time, defendants attempted to collect the balance on the account, including court costs and interest.

## II.     **Plaintiffs' FDCPA Claims**

Plaintiffs move for summary judgment on the issue of defendants' liability under the FDCPA. Specifically, plaintiffs assert that the undisputed facts establish that defendants failed to validate or verify the debt as required by FDCPA § 1692g and that defendants violated FDCPA § 1692e(2) by misrepresenting to plaintiffs certain facts concerning the state court litigation; misrepresenting to plaintiffs the amount of the debt owed; misrepresenting that they

4

had investigated plaintiffs' concerns about the amount of the debt; and unlawfully demanding attorney fees.[2] To prevail on their motion, however, plaintiffs must demonstrate that there is "no genuine issue as to any material fact" and that they are "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As will be explained, plaintiffs have not satisfied their burden and the court, then, denies their motion for summary judgment.[3]

The court begins with plaintiffs' claim that defendants failed to validate or verify the debt as required by FDCPA § 1692g. Pursuant to that statutory section, a debt collector must send the consumer a written notice containing "a statement that if the consumer notifies the debt collector in writing within [thirty days] that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(a)(4). Moreover, if the consumer notifies the debt collector in writing within

---

[2] Plaintiffs also contend that the undisputed facts establish that plaintiffs are the "object of collection activity arising from a consumer debt" and that defendants are "debt collectors" within the meaning of the FDCPA. *See, e.g., Rivera v. Amalgamated Debt Collection Servs., Inc.*, 462 F. Supp. 2d 1223, 1227 (S.D. Fla. 2006) ("To establish her claim under the FDCPA, Plaintiff must show that the Defendant is a debt collector and that it engaged in some act or omission prohibited by the FDCPA in attempting to collect from Plaintiff on her consumer debt."). Defendants concede these points for purposes of plaintiffs' motion.

[3] In response to plaintiffs' motion, defendants rely in part on the bona fide error defense set forth in FDCPA § 1692k(c). In reply, plaintiffs assert that defendants have waived this defense by failing to assert the defense in the pretrial order or at any time prior to their response to the motion for summary judgment. While it appears from the record that plaintiffs' assertion concerning the timing of defendants' defense is accurate, the court denies plaintiffs' motion for summary judgment on the grounds of material disputed facts without reference to defendants' reliance on the bona fide error defense. The court, then, need not address plaintiffs' waiver argument.

5

the 30-day period that the debt is disputed, the debt collector "shall cease collection of the debt . . . until the debt collector obtains verification of the debt." 15 U.S.C. § 1692g(b). According to plaintiffs, they notified defendants that Ms. McCammon was wrongfully billed for services rendered during a time when she no longer lived at the residence, thereby placing a duty on defendants to cease collection efforts and to verify the debt. Plaintiffs further assert that defendants violated this provision by failing to "investigate" plaintiffs' "concerns" and by simply relying on the statements of their client, Atmos Energy, as to the amount due and owing.

Plaintiffs are not entitled to judgment as a matter of law with respect to this claim. As an initial matter, defendants have come forward with evidence suggesting that plaintiffs did not request verification in writing within the 30-day period prescribed in § 1692(g). Specifically, defendants' evidence suggest that their initial contact with plaintiff occurred on August 31, 2004–the date that triggers the 30-day period. Plaintiffs, however, did not request verification of the debt until March 2005. Although plaintiffs contend that they never received the August 2004 communication, the evidence must be viewed in the light most favorable to defendants, the non-moving parties. In addition, defendants' evidence demonstrates that plaintiffs' verification request was made orally rather than in writing as required to trigger any duty under the statute.[4] Finally, material disputed facts exist concerning whether defendants failed to satisfy any verification obligation they may have had. Plaintiffs complain that defendants failed to "verify

---

[4] In fact, plaintiffs do not offer any evidence that they made a written verification request. They direct the court to two stipulations in the pretrial order stating that Ms. McCammon "[i]n a conversation with a representative of [defendants] . . . denied the amount of claims filed by [defendants] on behalf of Atmos."

6

plaintiffs' concerns" but point to no authority suggesting that a debt collector is required to conduct an independent investigation of a consumer's "concerns." *See Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173-74 (9th Cir. 2006) (debt collector did not have duty to independently investigate validity of debt and was entitled to rely on creditor's statements to verify debt). In any event, defendants' evidence that they contacted their client to verify the amount being claimed is sufficient to preclude summary judgment. *See, e.g., Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999) ("verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed"); *Senftle v. Landau*, 390 F. Supp. 2d 463, 474 n.11 (D. Md 2005) (debt collectors satisfied verification requirement by attaching debtor's contract with creditor and his most recent unpaid statements as exhibits to complaint); *Ducrest v. Alco Collections, Inc.*, 931 F. Supp. 459, 462 (M.D. La. 1996) (after tenant informed landlord's debt collector that debt was in dispute, collector was entitled to rely on representation made by the landlord with regard to the debt and did not have to further verify debt before resuming collection activity; "§ 1692g(b) only requires the debt collector to obtain verification of the debt, and this verification would necessarily come from the creditor").[5]

---

[5] In a related vein, plaintiffs suggest that defendants committed a separate violation of the FDCPA for misrepresentations in a June 13, 2005 letter to Ms. McCammon in which defendants allegedly suggest that they "investigated" Ms. McCammon's concerns when in fact they had not investigated her concerns. As an initial matter, a reasonable jury could conclude that the letter contains no suggestion that defendants investigated Ms. McCammon's concerns. Moreover, in the absence of evidence that defendants had a duty to investigate her concerns, summary judgment is not appropriate on this claim.

Plaintiffs also contend that defendants violated FDCPA § 1692g by failing to validate plaintiffs' settlement payments to Dynamic and continuing to press for payment after plaintiffs advised defendants that the debt had been satisfied. Plaintiffs have not shown that they are entitled to judgment as a matter of law with respect to this claim. Specifically, plaintiffs have come forward with no evidence that they have satisfied the writing requirement of section 1692g(b) with respect to the satisfaction of the debt. Indeed, plaintiffs' evidence indicates only that Ms. McCammon advised defendants orally that she had satisfied the debt. Moreover, plaintiffs have not shown that they notified defendants of that satisfaction within the 30-day validation period. *See Trull v. GC Servs. L.P.*, 961 F. Supp. 1199, 1205 (N.D. Ill. 1997) (under section 1692g, debt collector need only cease collection if the consumer disputes the debt within the validation period). For these reasons, summary judgment is not appropriate on plaintiffs' claims alleging violations of FDCPA § 1692g.

The court turns, then, to plaintiffs' claims alleging violations of FDCPA § 1692e(2). That section prohibits a debt collector, in connection with the collection of any debt, from using "any false, deceptive, or misleading representation" concerning "the character, amount or legal status" of the debt or "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." Plaintiffs first assert that defendants misrepresented the "legal status" of the debt in connection with the state court case by filing a motion for summary judgment in that case and pursuing a default judgment against Ms. McCammon based on her failure to answer the petition (and, in doing so, asserting to the court that plaintiff did not dispute the debt) without discussing those matters with her and did so with the knowledge that

8

Ms. McCammon had asserted that she had satisfied the debt. Material factual issues exist, however, with respect to this claim. While defendants may not have discussed with Ms. McCammon the filing of their motions, defendants' evidence shows that each filing was mailed to Ms. McCammon at the address on file for purposes of the state court litigation. Further, defendants' assertion in the state court litigation that Ms. McCammon did not dispute the debt was based on Ms. McCammon's failure to respond to requests for admissions and the consequent admission of the matters contained therein under the applicable state procedural rules. Finally, factual issues exist with respect to the timing and scope of defendants' knowledge concerning the payments made by Ms. McCammon to Dynamic.

Plaintiffs also assert that Ms. McCammon received a notice from the state court that the case was set on the court's dismissal docket for lack of prosecution and that defendants assured her that she did not need to appear for the dismissal docket and that they would handle removing the case from the dismissal docket. Defendants have come forward with evidence, however, that they did not represent to plaintiffs that they would handle removing the case from the dismissal docket. Viewing the evidence in the light most favorable to defendants as the non-moving parties, summary judgment is not warranted on this claim.[6]

---

[6]In their reply brief, plaintiffs complain that defendants have submitted "self-serving" affidavits in response to the motion for summary judgment, suggesting that those affidavits are somehow incompetent under Rule 56. Plaintiffs objection appears to refer to uncorroborated statements of fact or opinion which are favorable to the affiant. As the court has previously explained, this argument reflects a misunderstanding of summary judgment practice. *See, e.g., Horizon Holdings, LLC v. Genmar Holdings, Inc*., 241 F. Supp. 2d 1123, 1127 n.2 (D. Kan. 2002). The court evaluates the validity of an affidavit not by examining whom the affidavit serves, but rather by examining whether the affidavit relates specific,

Plaintiffs next assert that defendants misrepresented the amount of the debt on numerous occasions by requesting court costs and interest on the debt. Plaintiffs have not shown that they are entitled to judgment as a matter of law on this claim. More specifically, plaintiffs have not shown or attempted to explain why defendants are prohibited from seeking an amount that includes court costs and interest in light of the fact that the state court default judgment specifically obligates Ms. McCammon to pay court costs and interest on the debt. *See Foster v. D.B.S. Collection Agency*, 463 F. Supp. 2d 783, 805 (S.D. Ohio 2006) (no right to recover court costs or statutory interest except for when a court enters a lawful judgment in an action validly commenced under law) (applying Ohio law).[7]

Plaintiffs also maintain that defendants misrepresented the "services rendered" by suggesting that they had investigated Ms. McCammon's concerns that she was wrongfully billed for utilities provided during a time when she no longer lived at the residence when, in fact, defendants had not "verified" the debt. As explained above, however, there exists a question of material fact concerning whether defendants failed to verify the debt within the meaning of the FDCPA and, to the extent plaintiffs suggest that defendants were required to investigate independently plaintiffs' concerns about the debt, plaintiffs have directed the court to no

---

personalized facts within the affiant's knowledge. The "self-serving" portions of the affidavits submitted by defendants satisfy this burden.

[7]To the extent plaintiffs complain that defendants attempted to collect the principal debt after Ms. McCammon had paid the principal debt to Dynamic, summary judgment is also inappropriate in light of the existence of disputed factual issues concerning the scope of defendants' knowledge at various times in attempting to collect the debt.

10

authority supporting that argument. Plaintiffs have not shown that they are entitled to judgment as a matter of law with respect to this claim.

Finally, plaintiffs contend that defendants misrepresented the "compensation which may be lawfully received" by demanding attorneys' fees. *See* 15 U.S.C. § 1692f(1) (prohibiting the collection of any amount, including attorneys' fees, unless such amount is expressly authorized by the agreement creating the debt or permitted by law). While Ms. McCammon avers that defendants orally represented to her that she was responsible for paying attorneys' fees in connection with the state court litigation, defendants dispute that evidence with the affidavit of defendant Billy E. Newman, who avers that attorneys' fees were never plead or otherwise demanded orally or in writing. Moreover, while plaintiffs submit defendants' collection activity log and highlight an entry indicating that Ms. McCammon "will settle for what atmos [sic] claims she owes, plus atty [sic] fees and court costs," that entry does not necessarily require the inference–as plaintiffs suggest–that defendants demanded attorneys' fees. Rather, a reasonable jury could also conclude that the entry reflects not what defendants communicated to Ms. McCammon but what Ms. McCammon suggested to defendants. In short, the parties vigorously dispute whether defendants demanded attorneys' fees and both sides support their arguments with evidence. Plaintiffs, then, are not entitled to summary judgment with respect to this claim.

### III.    **Plaintiffs' Claim for Actual Damages**

Previously, defendants moved for summary judgment on plaintiffs' FDCPA claims on the grounds that those claims are barred by the *Rooker-Feldman* doctrine. *See Rooker v. Fidelity*

*Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In July 2007, the court denied that motion after concluding that plaintiffs' FDCPA claims challenged the collection practices utilized by defendants rather than the validity of the state court judgment. Defendants now move for summary judgment (which the court construes as a motion to dismiss for lack of subject matter jurisdiction, *see supra* note 1) on plaintiffs' claim for actual damages on the basis of *Rooker-Feldman*.[8] According to defendants, this court lacks jurisdiction under *Rooker-Feldman* because plaintiffs' claim for actual damages rests on allegations that the judgment itself inflicted an injury. As explained below, defendants' motion is granted in part and denied in part.

The *Rooker-Feldman* doctrine "arises by negative inference from 28 U.S.C. § 1257(a), which allows parties to state court judgments to seek direct review in the Supreme Court of the United States, but not to appeal to the lower federal courts." *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006) (citing *Crutchfield v. Countrywide Home Loans*, 389 F.3d 1144, 1147 (10th Cir. 2004)). *Rooker-Feldman* "precludes federal district courts from effectively exercising appellate jurisdiction over claims 'actually decided by a state court' and claims 'inextricably intertwined' with a prior state-court judgment." *Id.* (quoting *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 473 (10th Cir. 2002) (citing *Rooke*r, 263 U.S. at 415-16, and

---

[8]While defendants' motion for summary judgment is in the nature of a motion for reconsideration of the court's order denying defendants' previous motion, plaintiffs do not object to the motion on procedural grounds and it appears from the docket that plaintiffs, in advance of defendants filing their motion, agreed to the filing of the motion. See Minute Order of July 5, 2007.

*Feldman*, 460 U.S. at 483 n.16)).

The doctrine applies only when a plaintiff files suit in federal court seeking redress for an injury "caused by [a] state-court judgment." *Id*. at 1237 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 125 S. Ct. 1517, 1521-22 (2005)). As the Tenth Circuit has explained, "'we approach the question by asking whether the state-court judgment *caused*, actually and proximately, the *injury* for which the federal-court plaintiff seeks *redress*,' paying 'close attention to the *relief* sought' in the federal suit." *Id*. (quoting *Kenmen Eng'g*, 314 F.3d at 476 (emphasis in original)). In *Kenmen Engineering*, for example, "an Oklahoma court had issued an injunction that forced a firm and its agents to sell magnesium 'at a discounted rate, resulting in economic loss.'" *Id*. (quoting *Kenmen Eng'g*, 314 F.3d at 472). The firm's agents "filed suit in federal court, alleging that the injunction itself violated their rights under federal law, and requesting money damages as compensation for the forced sale." *Id*. (citing *Kenmen Eng'g*, 314 F.3d at 477). Emphasizing that the plaintiffs had not requested any form of prospective declaratory injunctive relief, the Circuit held that *Rooker-Feldman* deprived the district court of jurisdiction: the requested relief "would necessarily undo the Oklahoma state court's judgment" because it would "place them back in the position they occupied prior to the injunction." *Id*. (quoting *Kenmen Eng'g*, 314 F.3d at 477). In contrast, when the relief sought by a plaintiff in federal court would not reverse or "undo" the state-court judgment, *Rooker-Feldman* does not apply. *Id*. So long as the plaintiff "presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party," then the federal court has jurisdiction over the claim. *Id*. (quoting *Exxon Mobil*, 125

13

S. Ct. at 1527).

Using these principles as a guide, the court first looks to the pretrial order to ascertain the nature of the relief sought by plaintiffs and, more specifically, their claim for actual damages that is the subject of defendants' motion. In the pretrial order, plaintiffs allege that they sustained "actual damages of approximately $252,838 (calculated as the difference in interest charged on the loan [Ms. McCammon] was able to obtain at 11.75% interest and the 8% interest rate they had qualified to receive prior to disclosure of the acts of defendants)." Plaintiffs also claim damages of $287,000 for "the future cost of credit for plaintiffs' business endeavors." As fleshed out in the record, plaintiffs contend that they received, in early August 2005, an offer to refinance their mortgage at an 8% interest rate but that when they ultimately refinanced their mortgage in late October 2005, they were forced to refinance at a much higher interest rate in light of Ms. McCammon's intervening negative credit report.

In their motion, defendants frame plaintiffs' actual damages theory as one that is based solely on the default judgment appearing on Ms. McCammon's credit report such that any damages sought by plaintiffs based on Ms. McCammon's negative credit report necessarily stem from the judgment itself. Indeed, plaintiffs' complaint seemed to suggest as much as it identified the "August 2005 judgment" as the catalyst for the negative credit report and the increased interest rate. Plaintiffs also sought in their complaint an order directing defendants to "remove their judgment," further supporting defendants' argument that the judgment itself is the cause of any injuries to plaintiffs' credit. To the extent plaintiffs' claim for actual damages is premised on the theory that Ms. McCammon's credit report was damaged as a result of the default

14

judgment, the court agrees with defendants that *Rooker-Feldman* bars the court from asserting jurisdiction over the claim. That particular theory of damages asks the jury to conclude (as plaintiffs have alleged) that the judgment was obtained through fraud or improper means such that it never should have been entered and never should have appeared on Ms. McCammon's credit report and thus to return plaintiffs to the position they occupied prior to the judgment when they were offered financing at the lower interest rate. Under this theory, plaintiffs would have suffered no injury (in terms of actual damages) but for the state court judgment. The requested relief, then, would effectively "undo" the state court judgment and the court grants defendants' motion to dismiss to the extent plaintiffs' claim for actual damages stems from the judgment's affect on Ms. McCammon's credit report. *See Dickerson v. Bates*, 287 F. Supp. 1251, 1255 (D. Kan. 2003) (plaintiff's claims seeking monetary damages attributable to losses he sustained as a result of the state-court judgment fell within ambit of *Rooker-Feldman*), *aff'd*, 2004 WL 1510017 (10th Cir. 2004); *see also Ellis v. CAC Fin. Corp.*, 2001 WL 289943, at \*3 (10th Cir. Mar. 26, 2001) (where plaintiffs requested damages for, among other things, loss of credit, claims were barred by *Rooker-Feldman* in that they called into question the state court judgment).

That having been said, the allegations made by plaintiffs in their complaint are not dispositive, as the complaint, at the time defendants filed their motion, had been superseded by the pretrial order. Plaintiffs do not, in the pretrial order, request an order directing defendants to "remove the judgment" and do not allege that the judgment itself caused the negative credit report. Rather, the pretrial order alleges only that the credit report was negatively affected "by

15

the acts of defendants." To the extent, then, that plaintiffs contend that Ms. McCammon's credit suffered as a result of some act of defendants (as opposed to the entry of judgment itself), defendants' motion is denied. For example, plaintiffs suggest in the pretrial order (and in the affidavit filed by Ms. McCammon in connection with defendants' first motion for summary judgment) that defendants took some affirmative act to report the Atmos debt to the credit reporting agencies (thereby causing the debt to appear on her credit report) and that defendants should have either reported that the judgment was satisfied or taken some step to "retract" the judgment from her credit report once they verified that Ms. McCammon had satisfied the debt. In such circumstances, plaintiffs' claim for actual damages would not call into question the state-court judgment and is not barred by *Rooker-Feldman*.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' motion for summary judgment on their FDCPA claims (doc. 102) is denied and defendants' motion for summary judgment on plaintiffs' claim for actual damages based on the *Rooker-Feldman* doctrine (construed by the court as a motion to dismiss) (doc. 101) is granted in part and denied in part.

**IT IS SO ORDERED** this 18th day of September, 2007.

s/ John W. Lungstrum  
John W. Lungstrum  
United States District Judge